# IN THE UNITED STATES DISTRICT COURT FOR THE
# CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, a nonprofit corporation, ) ) ) | |
| Plaintiff, ) ) | Case No. 24-cv-3299 |
| v. ) ) | Honorable Sara Darrow |
| JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois, and KEVIN HUBER, in his official capacity as Chairman of the Illinois Student Assistance Commission, ) ) ) ) ) ) ) | |
| Defendants. ) | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT

## INTRODUCTION

Plaintiff, a membership organization, has an ideological objection to one of the eligibility criteria for a longstanding scholarship program. In bringing this suit to challenge that criterion, the organization does not claim to have suffered any injury stemming from the statutory scheme, such as interference with its (unspecified) operations. Instead, it relies on an injury allegedly suffered by a single unnamed member.

Even taking all of Plaintiff's allegations as true, this Court lacks jurisdiction over Plaintiff's claims. Supreme Court precedent makes clear that Plaintiff cannot circumvent Article III's standing requirement by relying solely on an alleged injury to a single unnamed member. As such, Defendants respectfully request that the Court dismiss Plaintiff's claims. *See* Fed. R. Civ. P. 12(b)(1). In the alternative, if this case proceeds, the Court should order limited jurisdictional discovery related to Plaintiff's allegedly injured member's standing.

1

**BACKGROUND**

"In order to encourage academically talented Illinois minority students to pursue teaching careers . . . and to address and alleviate the teacher shortage crisis in this State," Illinois has, since 1991, offered the Minority Teachers of Illinois Scholarship.  110 ILCS 947/50(b); *see* Ill. Pub. Act 87-301, 1991 Ill. Laws 1765; Ill. Pub. Act. 86-1315, 1990 Ill. Laws 2379.  Administered by the Illinois Student Assistance Commission, the Scholarship is open to students at Illinois colleges or universities who are pursuing degrees or licensure in education and meet certain eligibility criteria, including membership in a minority group and maintenance of a sufficiently high GPA.  *See* 110 ILCS 947/50(a)-(b).

Plaintiff, the American Alliance for Equal Rights, describes itself as a 501(c)(3) "nationwide membership organization that is dedicated to eliminating racial distinctions and preferences in America."  Compl. ¶ 5; *see id.* ¶ 9.  Plaintiff's complaint does not otherwise describe the organization's operations or structure or identify any way, beyond ideological disagreement, in which the Scholarship's eligibility criteria affect it.  *See id.* ¶¶ 5, 9.[1]  Nor does the complaint identify any of Plaintiff's members by name.  Instead, Plaintiff alleges that it has one unnamed Illinois-based member, "Member A," who would apply for the Scholarship but is ineligible because she "does not qualify as a racial minority."  *Id.* ¶ 10.

---

[1] Plaintiff's website is no more forthcoming:  Its "About" page largely repeats the complaint's high-level description of the organization, *see About*, Am. All. for Equal Rts., https://tinyurl.com/5xku493u (last visited Dec. 20, 2024), and its "Contact Us" section provides contact information only for Plaintiff's president, conservative activist Edward Blum, *Contact Us*, Am. All. for Equal Rts, https://tinyurl.com/3taytzmb (last visited Dec. 20, 2024); *see, e.g.*, Lulu Garcia-Navarro, *He Worked for Years to Overturn Affirmative Action and Finally Won.  He's Not Done.*, N.Y. Times (July 8, 2023), https://tinyurl.com/bdf3sf3s.  Each page offers the opportunity to become a "[m]ember" for the "[l]ifetime" price of $10 and promises that "[t]he identities of . . . members will never be disclosed."  *E.g.*, *Contact Us*, *supra*.

Plaintiff filed this action on October 22, 2024. It asserts that one of the Scholarship's eligibility criteria — the requirement that each recipient belong to a minority group — violates the Fourteenth Amendment's Equal Protection Clause. *Id.* ¶¶ 31-42. It requests a declaratory judgment that the criterion is unconstitutional and an injunction prohibiting its enforcement. *Id.* at 8.

## LEGAL STANDARD

Plaintiff bears the burden of establishing the Court's subject matter jurisdiction. *See, e.g., Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588-89 (7th Cir. 2014). Because Defendants challenge the adequacy of the jurisdictional allegations in Plaintiff's pleading, the Court must "accept all [of the complaint's] well-pleaded factual allegations as true and draw all reasonable inferences in [Plaintiff's] favor." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021). But the Court need not accept conclusory statements or "speculation . . . [that] 'stop[s] short of the line between possibility and plausibility.'" *Id.* at 1010 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see Iqbal*, 556 U.S. at 678-80.

## ARGUMENT

Plaintiff has not met its burden of establishing the Court's jurisdiction. Plaintiff lacks standing to sue both Defendants because it alleges no injury to itself and cannot rely on any injury suffered by a single unnamed member.

"All plaintiffs, including organizations, seeking to invoke federal jurisdiction must have standing." *Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008). "To establish standing, . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *FDA v. All. for*

3

*Hippocratic Med.*, 602 U.S. 367, 380 (2024). This requirement "screens out plaintiffs who might have only a general legal, moral, ideological, or policy objection to a particular government action," *id.* at 381, and ensures that a litigant has "a 'personal stake' in the dispute," *id.* at 379 (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).

"When an organization seeks to assert standing, it can do so either on behalf of itself or on behalf of its members." *Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs*, 708 F.3d 921, 926 (7th Cir. 2013). "The latter is called associational standing." *Id.* To establish associational standing, a plaintiff must show, among other things, that "at least one of its members would 'have standing to sue in their own right.'" *Prairie Rivers*, 2 F.4th at 1008 (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977)). Even accepting the complaint's well-pleaded allegations as true, Plaintiff has not established either form of standing, making dismissal appropriate. In the alternative, if the Court does not dismiss this case in its entirety, it should authorize limited jurisdictional discovery concerning Member A so that Defendants and the Court can evaluate the factual basis for Plaintiff's standing.

I. **PLAINTIFF DOES NOT HAVE STANDING TO BRING THIS SUIT ON ITS OWN BEHALF.**

First, Plaintiff does not have standing on its own behalf because — among other shortfalls — it has not suffered any injury in fact. Such an injury must be "concrete" and "particularized"; a "strong moral, ideological, or policy objection" will not suffice. *All. for Hippocratic Med.*, 602 U.S. at 381. The complaint, which does not meaningfully describe Plaintiff beyond its "mission . . . to challenge racial classifications and preferences in America," Compl. ¶ 9, gives no indication of any concrete injury to the organization itself. Instead, the pleading makes clear that Plaintiff aims "to vindicate" its policy preferences, as well as to address purported violations of "*its members'* constitutional rights." *Id.* ¶ 6 (emphasis added). However strenuously

4

Plaintiff may disagree with the Scholarship's eligibility requirements, its ideological objections "do not establish a justiciable case or controversy in federal court." *All. for Hippocratic Med.*, 602 U.S. at 396. Plaintiff therefore does not have standing on its own behalf.

**II.    PLAINTIFF HAS NOT ESTABLISHED THAT IT HAS ASSOCIATIONAL STANDING.**

Plaintiff also cannot rely on associational standing because it fails to name at least one member who would have standing to bring this case in her own right, as required by the Supreme Court's decision in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009). Although Plaintiff will likely argue that it has met this requirement by "naming" Member A or that *Summers* does not control at the pleading stage, neither contention withstands scrutiny. And the Seventh Circuit's longstanding disfavor for "pseudonymous litigation," *Doe v. Trs. of Ind. Univ.*, 101 F.4th 485, 492 (7th Cir. 2024), confirms the inadequacy of Plaintiff's pleading.

Plaintiff has not satisfied *Summers*. That case was a challenge by several environmental groups to certain federal regulations that the plaintiffs believed would adversely affect national forests. *See* 555 U.S. at 490-92. The Court concluded that the plaintiffs lacked standing to bring their claims. *Id.* at 496-501. In so doing, it rejected an argument that the plaintiffs could, for purposes of associational standing, rely on a "statistical probability" that "some (unidentified) members [would] visit some (unidentified) small parcels affected by the [challenged regulations] and [would] suffer (unidentified) concrete harm as a result." *Id.* at 497-98. Instead, the Court held that organizations must "*name* the individuals . . . harmed by the challenged . . . program,"

5

observing that "[t]his requirement of naming the affected members has never been dispensed with in light of statistical probabilities." *Id.* at 498-99 (emphasis added).[2]

*Summers* thus requires Plaintiff to name at least one member injured by the Scholarship's eligibility criteria. That showing would ordinarily take the form of demonstrating that the individual in question is "'ready and able' to apply" for the Scholarship but is prevented from doing so on an equal basis by the allegedly discriminatory eligibility requirement. *Carney v. Adams*, 592 U.S. 53, 60 (2020) (quoting *Gratz v. Bollinger*, 539 U.S. 244, 262 (2003)); *see, e.g.*, *Do No Harm v. Pfizer Inc.*, 96 F.4th 106, 116 (2d Cir. 2024). Plaintiff plainly understands this principle, as its complaint repeatedly asserts that it has "members who are qualified, ready, willing, and able to apply [for] the Scholarship." Compl. ¶ 5. But, like the environmental groups in *Summers*, Plaintiff fails to *name* a single member who fits this description. It therefore lacks standing.

Plaintiff cannot comply with *Summers* by referring pseudonymously to a "Member A" unknown to the Court and Defendants. First, use of a pseudonym is inconsistent with the decision's language: the Court used the terms "name" and "naming," 555 U.S. at 498, and lower courts must "assume the . . . Court said what it meant and meant what it said," *Do No Harm*, 96 F.4th at 116. More fundamentally, Plaintiff's approach would defeat the purpose of *Summers*'s naming requirement, which, as both *Summers* and the Seventh Circuit's subsequent decision in *Prairie Rivers* made clear, is to enable courts and opposing litigants to verify plaintiffs' standing. *See*

---

[2] Prior to *Summers*, the Seventh Circuit had held that associational standing doctrine "allow[ed] for the member on whose behalf [a] suit [was] filed to remain unnamed by the organization." *Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008). *Summers* flatly rejected this view. *See* 555 U.S. at 498-99; *cf. Prairie Rivers*, 2 F.4th at 1011 (noting *Disability Rights Wisconsin*'s apparent inconsistency with both *Summers* and subsequent case law from other circuits).

6

*Summers*, 555 U.S. at 499; *Prairie Rivers*, 2 F.4th at 1009. *Summers* reasoned that, if plaintiff organizations did not name specific members with standing, courts would be unable to satisfy their "independent obligation to assure that standing exists." 555 U.S. at 499. And *Prairie Rivers* observed that failure to comply with the naming requirement would prevent defendants from timely moving to dismiss for lack of standing. *See* 2 F.4th at 1009. Yet Plaintiff's reference to Member A does nothing to advance this purpose; it leaves Defendants and the Court no more able to evaluate Plaintiff's jurisdictional allegations than would the statistical approach rejected in *Summers*. A pseudonym known only to Plaintiff is thus no substitute for an injured member's name.[3]

The Second Circuit's decision in *Do No Harm*, which discussed the importance of *Summers*'s naming requirement on facts similar to this case's, is instructive. *Do No Harm* addressed an organizational plaintiff's challenge to an allegedly discriminatory eligibility criterion for a fellowship program. *See* 96 F.4th at 108. The plaintiff asserted associational standing based on injuries allegedly suffered by two members identified "by the pseudonyms 'Member A' and

---

[3] Defendants acknowledge that the Tenth and Eleventh Circuits have concluded that *Summers* permits an organizational plaintiff to identify an injured member using a pseudonym, *see Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024); *Am. All. for Equal Rts. v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 772-73 (11th Cir. 2024), but for the reasons discussed here and in the Second Circuit's decision in *Do No Harm*, that conclusion is not persuasive, *see* 96 F.4th at 115-19. Defendants also note that *Summers*'s naming requirement does not necessarily mean that Plaintiff must reveal Member A's identity to the public. At least in suits with individual plaintiffs, courts may sometimes allow "pseudonymous litigation when the balance of harms justifies it." *Trs. of Ind. Univ.*, 101 F.4th at 492. If Plaintiff feels there is good cause to redact Member A's name from the public docket, it can file an appropriate motion — though, as discussed below, *infra* p. 10, the Seventh Circuit discourages use of pseudonyms, and it is unclear from the complaint how Plaintiff could make the necessary showing. *See Trs. of Ind. Univ.*, 101 F.4th at 491-93 (discussing relevant considerations and observing that "embarrassment" or a fear of "stigmatization," among other things, "do[] not justify anonymity"). At minimum, however, Plaintiff must reveal Member A's name to the Court and Defendants. *See, e.g., Do No Harm*, 96 F.4th at 117 ("[W]e do not allow parties to remain anonymous *to the court*." (citation omitted)).

'Member B,'" who were allegedly "ready and able" to apply for the fellowship but could not do so because of the purportedly discriminatory criterion. *Id.* at 110-11. The court concluded that *Summers* had "recognized the necessity of *naming* members actually harmed by a challenged program," and thus, because the plaintiff had not identified at least one of these members *by name* — rather than a description, no matter how detailed — it lacked standing. *Id.* at 116; *see id.* at 115-19. The court went on to explain why this application of the naming requirement served important Article III values. *See id.* at 116-19. It observed that "disclosure . . . of the harmed members' real names is relevant to standing because it shows that identified members are genuinely ready and able to apply, and are not merely enabling the organization to lodge a hypothetical legal challenge." *Id.* at 116. That is, "[a] member's name does not merely check a box; it is a demonstration of the sincerity of the member's interest in applying," a "quintessential Article III standing concern[]." *Id.* The same reasoning applies here, where Plaintiff is pursuing a remarkably similar standing argument, down to the format of the pseudonyms used — though with only half as many allegedly injured members. Requiring Plaintiff to provide Member A's name not only is required by *Summers* but also addresses important Article III concerns about Member A's actual interest in applying for the Scholarship.

The fact that *Summers* involved an appeal from summary judgment, rather than a Rule 12(b)(1) motion, does not excuse Plaintiff's failure to name an injured member. Although the Supreme Court has noted that "the manner and degree of *evidence* [of standing] required at the successive stages of the litigation" may vary, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (emphasis added), Defendants do not argue that Plaintiff has submitted insufficient *evidence*. Defendants agree that Plaintiff can, at this stage, rely on allegations alone. *See id.* But, even taking

8

its well-pleaded allegations as true, the complaint does not allege an essential piece of information: the name of an injured member.

Indeed, although the Seventh Circuit has not yet squarely decided whether *Summers*'s naming requirement applies at the pleading stage, it has identified several factors supporting that view. *See Prairie Rivers*, 2 F.4th at 1010-11. In *Prairie Rivers*, the court reasoned that "a defendant should be able to make its own standing challenge as soon as the Federal Rules of Civil Procedure permit it to do so — at the pleadings, not summary judgment." *Id.* at 1010. Applying the naming requirement at the pleading stage would advance that goal; Plaintiff's approach would undermine it. As the Seventh Circuit warned, "[a]llowing an association to avoid showing an individual member's standing at the pleading stage would effectively shift a defendant's Rule 12(b)(1) motion into summary judgment, permitting associational plaintiffs to proceed to discovery in nearly every case." *Id.* at 1010. Nor would requiring Plaintiff to name an injured member impose an unreasonable burden: while some "facts relevant to associational standing could be discernible only after discovery begins, . . . standing for at least one individual member of an association is not one of them." *Id.* (citing *Draper v. Healey*, 827 F.3d 1, 3 (1st Cir. 2016) (Souter, J.)). These considerations further support applying the naming requirement at the pleading stage.

That conclusion also agrees with case law from the First Circuit. In *Draper* — which the Seventh Circuit cited favorably in *Prairie Rivers*, *see* 2 F.4th at 1010 — that court held that, under *Summers*, a plaintiff asserting associational standing must "name[] an injured individual" even at the pleading stage. *Draper*, 827 F.3d at 3. For all these reasons, Plaintiff bore the burden of naming an injured member in its complaint.

More generally, enforcing the naming requirement against Plaintiff is also consistent with the Seventh Circuit's "disfavor" for "anonymous litigation." *Doe v. Smith*, 429 F.3d 706, 710 (7th Cir. 2005). As that court has repeatedly explained, "[t]he public has an interest in knowing what the judicial system is doing, an interest frustrated when any part of litigation is conducted in secret," *id.*, and so a party may conceal its identity only in "exceptional circumstances," *Doe v. Village of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016) (quoting *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997)); *accord, e.g.*, *Trs. of Ind. Univ.*, 101 F.4th at 491-93; *Mueller v. Raemisch*, 740 F.3d 1128, 1135-36 (7th Cir. 2014). In particular, "[s]ecrecy makes it difficult for the public (including the bar) to understand the grounds and motivations of a decision, why the case was brought (and fought), and what exactly was at stake in it." *Mueller*, 740 F.3d at 1135-36. Although Member A is not technically a party to this case, that concern is no less pressing here, where Plaintiff seeks to base its standing — its "personal stake" in this case, *All. For Hippocratic Med.*, 602 U.S. at 379 (quoting *TransUnion*, 594 U.S. at 423) — on Member A's purported injury while concealing Member A's identity not just from the public but also from Defendants and the Court. As the Second Circuit has recognized, "it would . . . be incongruous . . . to allow an association to rest its standing on [an] anonymous member . . . when [a court] would not allow those members, as individual parties, to proceed anonymously . . . in their own right." *Do No Harm*, 96 F.4th at 117. The Seventh Circuit's longstanding emphasis on transparency underscores the impropriety of Plaintiff's approach.

### III.   ALTERNATIVELY, JURISDICTIONAL DISCOVERY IS NECESSARY TO DETERMINE IF MEMBER A WOULD HAVE STANDING TO SUE.

In the alternative, if the Court declines to dismiss this suit outright, it should authorize jurisdictional discovery concerning Member A before allowing the case to proceed. A court must "conduct whatever supplementary factual proceedings are necessary to resolve" any "doubt" about

its jurisdiction, *Bazile v. Fin. Sys. of Green Bay, Inc.*, 983 F.3d 274, 281 (7th Cir. 2020) (quoting *Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir. 1986)), and "may allow discovery" for that purpose, 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (4th ed. 2024); *see also* Fed. R. Civ. P. 26(d)(1) (permitting early discovery "by court order"). Without knowing Member A's identity, Defendants cannot meaningfully investigate or contest Plaintiff's jurisdictional allegations. For example, it cannot evaluate Member A's eligibility for the Scholarship or the sincerity of her interest in applying — key facts for determining whether she is in fact "'able and ready' to apply." *Carney*, 592 U.S. at 60 (quoting *Gratz*, 539 U.S. at 262); *see id.* at 60-66 (concluding that plaintiff was not ready and able to apply for judgeship and therefore lacked standing to challenge eligibility requirement). For the same reasons, the Court cannot assess its own jurisdiction, as it must before reaching any merits issue. *See Bazile*, 983 F.3d at 281. Further, deferring resolution of a threshold, potentially dispositive jurisdictional issue indefinitely when Plaintiff already possesses most or all of the essential facts would disserve judicial economy and risk squandering the parties' resources. *See Prairie Rivers*, 2 F.4th at 1010 ("[A] defendant should be able to make its own standing challenge as soon as the Federal Rules of Civil Procedure permit it to do so . . . ."). For both doctrinal and practical reasons, then, if this case proceeds, targeted jurisdictional discovery concerning Member A's standing is the appropriate next step.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court dismiss Plaintiff's claims without prejudice for lack of jurisdiction or, in the alternative, order limited jurisdictional discovery.

December 20, 2024                            Respectfully submitted,

                                                                 */s/ Mary A. Johnston*

Mary A. Johnston
Office of the Illinois Attorney General
Government Representation Division
General Law Bureau
115 South LaSalle
Chicago, Illinois 60603
(312) 814-4417
Mary.Johnston@ilag.gov

*Counsel for Defendants*