UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| AMERICAN ALLIANCE FOR EQUAL RIGHTS, a nonprofit corporation, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Case No. 3:24-cv-03299-SLD-RLH |
| JAY ROBERT PRITZKER, in his official capacity as Governor of the State of Illinois; and KEVIN HUBER, in his official capacity as Chairman of the Illinois Student Assistance Commission, | ) ) ) ) ) ) ) |
| Defendants. | ) |

ORDER

Before the Court is Defendants Jay Robert Pritzker and Kevin Huber's Motion to Dismiss Plaintiff's Complaint, ECF No. 11. For the following reasons, the motion is DENIED.

### BACKGROUND[1]

The Minority Teachers of Illinois Scholarship Program ("the Scholarship Program") was established in 1992 to "encourage academically talented Illinois minority students to pursue teaching careers . . . and to address and alleviate the teacher shortage crisis." Compl. ¶ 2, ECF No. 1 (quoting 110 ILCS 947/50(b)). Scholarship recipients are awarded up to $7,500 per year to help cover tuition, fees, and room and board. The Scholarship Program is only available to minority students who have graduated from high school or received a high school diploma, maintained a cumulative grade point average [("GPA")] of at least 2.5 on a 4.0 scale, and are enrolled or accepted on at least a half-time basis at an Illinois institution of higher education.

---

[1] When reviewing a motion to dismiss, the court "accept[s] as true all well-pleaded facts in the complaint and draw[s] reasonable inferences in favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022). Unless otherwise noted, the factual background is drawn from the Complaint.

The Scholarship Program defines "minority student" as one who is "American Indian or Alaska Native, Asian, Black or African American, Hispanic or Latino, Native Hawaiian or Other Pacific Islander." *Id.* ¶ 17 (citing 110 ILCS 947/50(a)). Eligible applicants must meet the following criteria to qualify: (i) be a resident of Illinois and a citizen or permanent resident of the United States; (ii) be a minority student; (iii) make a timely application to the Scholarship Program; (iv) be enrolled on at least a half-time basis at a qualified Illinois institution of higher learning to become a licensed teacher; (v) maintain a GPA of no less than 2.5 on a 4.0 scale; and (vi) continue to advance satisfactorily toward the attainment of a degree. The Scholarship Program is administered by the Illinois Student Assistance Commission ("ISAC").

Plaintiff American Alliance for Equal Rights ("American Alliance") is a nationwide nonprofit membership organization headquartered in Austin, Texas. Its "mission is to challenge racial classifications and racial preferences in America." *Id.* ¶ 9. On October 22, 2024, American Alliance sued Pritzker, as the Governor of Illinois, and Huber, as the Chairman of ISAC, in their official capacities. American Alliance alleges that by appropriating funds and administering the Scholarship Program, Pritzker and Huber (collectively, "the State") are enforcing "racial exclusion" and violating the Equal Protection Clause of the Fourteenth Amendment. *See generally id.* American Alliance brings this suit on behalf of its members and specifically identifies "Member A," alleging that she is "qualified, ready, willing, and able to apply to the Scholarship Program" but is unable to do so because of her non-minority race. *Id.* ¶ 29. American Alliance seeks a declaratory judgment that the racial exclusion component of the Scholarship Program violates the Fourteenth Amendment and a permanent injunction barring the State from enforcing the Scholarship Program's racial exclusion component, as well as attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

DISCUSSION

I.     **Legal Standard**

The State moves to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), arguing that American Alliance has not sufficiently alleged the requirements of Article III standing. *See generally* Defs.' Mem. Supp. Mot. Dismiss, ECF No. 12. The State asserts that, even taking the Complaint's well-pleaded factual allegations as true, those allegations are inadequate to show that American Alliance has standing to sue. *See id.* at 1, 3–4, 8–9. Accordingly, the Court construes the State's motion as a facial attack on American Alliance's standing.

"A facial attack tests whether the allegations, taken as true, support an inference that the elements of standing exist . . . ." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021) (quotation marks omitted). The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing the requisite elements of standing. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015). When a defendant challenges the legal sufficiency of the allegations concerning subject-matter jurisdiction, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Id.*

Standing is an essential component of Article III's case-or-controversy requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "All plaintiffs, including organizations, seeking to invoke federal jurisdiction must have standing." *Freedom from Religion Found., Inc. v. Nicholson*, 536 F.3d 730, 737 (7th Cir. 2008). To establish Article III standing, a plaintiff must show (1) an "injury in fact" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) a "causal connection between the injury and the conduct

3

complained of," and (3) a likelihood, as opposed to mere speculation, that the injury "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (alterations and quotation marks omitted).

In cases where the plaintiff is an organization, as it is here, the standing requirements of Article III can be met in one of two ways. *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023). The organization can either "claim that it suffered an injury in its own right or, alternatively, it can assert 'standing solely as the representative of its members.'" *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 511 (1975)). The latter approach is known as associational standing, or sometimes representational or organizational standing. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Students for Fair Admissions, Inc.*, 600 U.S. at 199. An organization has standing to bring suit on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt*, 432 U.S. at 343. This three-part test satisfies Article III "by requiring an organization suing as representative to include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996). "Associational standing, then, is derivative of—and not independent from—individual standing." *Prairie Rivers Network*, 2 F.4th at 1008.

**II.     Analysis**

The State challenges the sufficiency of American Alliance's allegations regarding associational standing and alternatively, requests the Court's leave to conduct jurisdictional

discovery. Defs.' Mem. Supp. Mot. Dismiss 3–11. American Alliance responds that its allegations are sufficient at this stage and that discovery is not warranted. Pl.'s Mem. Opp. Mot. Dismiss 2–12, ECF No. 14.

    **a. Associational Standing**

American Alliance does not assert standing on its own behalf, but instead invokes associational standing. *See* Pl.'s Mem. Opp. Mot. Dismiss 3 n.1 ("[The State's] argument that [American Alliance] lacks direct standing is irrelevant, as [American Alliance] does not assert standing in its own right."). The State does not challenge the second and third elements of the associational standing test, but instead argues only that American Alliance has not satisfied the first element "because it fails to name at least one member who would have standing to bring this case in her own right." Defs.' Mem. Supp. Mot. Dismiss 5.

The State asserts that American Alliance's failure to identify any injured member by name means that it cannot rely on associational standing, and that providing a pseudonym is not sufficiently "naming" a member. *Id.* The State contends that the Supreme Court's decision in *Summers v. Earth Island Institute*, 555 U.S. 488 (2009), established a "naming requirement" that plaintiff-organizations must fulfill to establish associational standing and that American Alliance has not fulfilled such requirement. *Id.* at 5–10. American Alliance responds that it is not required to provide the legal name of a member with individual standing at this stage—it need only *identify* a member and plead facts that establish that member's standing in her own right. *See* Pl.'s Mem. Opp. Mot. Dismiss 4–11; *see also id.* at 7 ("[American Alliance] may identify Member A without naming her."). American Alliance argues that it has sufficiently pleaded Article III standing because it "has identified Member A and described with specificity the 'imminent and concrete harm' she suffers due to the [S]cholarship [P]rogram's racially

exclusionary requirement." *Id.* at 5 (quoting *Summers*, 555 U.S. at 495). American Alliance alleges that Member A is a representative example of a member who has standing to sue in her own right because she is not a minority student but is "otherwise qualified, ready, willing, and able to apply to the Scholarship Program." Compl. ¶¶ 20–30.

      The State misconstrues the Supreme Court's decision in *Summers* to create a standard that is satisfied simply by the *literal naming* of individual members. Defs.' Mem. Supp. Mot. Dismiss 5–10. In *Summers*, the question of pseudonymous litigants was not before the Supreme Court. In fact, the Supreme Court considered the affidavits of two organization members and concluded that they were insufficient to demonstrate standing *not* because the members were unnamed—the affidavits were submitted by members Ara Marderosian and Jim Bensman—but because the attestations did not support a concrete injury in fact. *Summers*, 555 U.S. at 494–96. The dissent argued that the affidavits were sufficiently specific and disagreed that anything more was needed to establish standing. *Id.* at 507–10 (Breyer, J., dissenting). The majority characterized the dissent's argument as "a hitherto unheard-of test for organizational standing: whether, accepting the organization's self-description of the activities of its members, there is a statistical probability that some of those members are threatened with concrete injury." *Id.* at 497. The Court rejected the notion that associational standing requirements could be met by simply alleging a statistical probability that "some (unidentified) members have planned to visit some (unidentified) small parcels affected by the Forest Service's procedures and will suffer (unidentified) concrete harm as a result." *Id.* at 497–98.

      *Summers* emphasizes the importance of requiring plaintiffs to "*identify* members who have suffered the requisite harm" when bringing a suit by associational standing, *id.* at 499 (emphasis added), but this *identification* requirement has not been universally interpreted as a

*naming* requirement. The Seventh Circuit has explicitly reserved the question of whether *Summers* overruled its prior decisions which "noted that the requirement for an individual member to have standing 'still allows for the member on whose behalf the suit is filed to remain unnamed by the organization.'" *Prairie Rivers Network*, 2 F.4th at 1011 (quoting *Disability Rts. Wis., Inc. v. Walworth Cnty. Bd. of Supervisors*, 522 F.3d 796, 802 (7th Cir. 2008)); *accord Luce v. Kelly*, No. 21-cv-1250, 2022 WL 204373, at *5 (N.D. Ill. Jan. 24, 2022) ("To date, however, the Seventh Circuit has not required organizations to name individual members who possess standing.").

The State points to the First Circuit's decision in *Draper v. Healey*, 827 F.3d 1 (1st Cir. 2016) (Souter, J., sitting by designation), which held that an "association must, at the very least, identify a member who has suffered the requisite harm" to have standing. *Draper*, 827 F.3d at 3 (alterations and quotation marks omitted). But *Draper* did not decide whether identification requires the disclosure of legal names or merely a sufficient "degree of descriptive information" about a member. *Fac., Alumni, & Students Opposed to Racial Preferences v. Harvard L. Rev. Ass'n*, No. 18-12105-LTS, 2019 WL 3754023, at *6 (D. Mass. Aug. 8, 2019).

Moreover, other circuits have decided this question against the State's view. In a similar case also brought by American Alliance, the Eleventh Circuit held that *Summers* does not "impose[] a requirement that an organizational plaintiff identify affected members by their legal names." *Am. All. for Equal Rights v. Fearless Fund Mgmt., LLC*, 103 F.4th 765, 773 (11th Cir. 2024); *see also Speech First, Inc. v. Shrum*, 92 F.4th 947, 949 (10th Cir. 2024) ("Anonymity was not even an issue before the Supreme Court in *Summers*. Although one might read language in that opinion to require that only persons identified by their legal names can have standing, that

7

was clearly not the intent of the [Supreme] Court.").[2] The State has not established that *Summers* entitles the Court to ignore binding authority like *Disability Rights Wisconsin* or persuasive authority like *Fearless Fund Management* and *Speech First*.

With that proper understanding of *Summers*, the Court turns to the instant case. Here, in contrast to the plaintiffs' allegations in *Summers*, American Alliance sufficiently identifies a particular individual, "Member A," and alleges specific personal facts about her, including her current education level, GPA, higher education plans, career plans, financial concerns, scholarships received, and race. Compl. ¶¶ 20–30. Such allegations identify a particular member and do not rely on the statistical probabilities that *Summers* squarely rejected.

The State is correct that the Seventh Circuit generally disfavors "pseudonymous litigation," Defs.' Mem. Supp. Mot. Dismiss 5 (quoting *Doe v. Trs. of Ind. Univ.*, 101 F.4th 485, 492 (7th Cir. 2024)), but it is important to distinguish between a pseudonym used to identify an individual plaintiff and a pseudonym used to identify a member of an organizational plaintiff, Pl.'s Mem. Opp. Mot. Dismiss 9–11. For example, in *Doe v. Village of Deerfield*, 819 F.3d 372 (7th Cir. 2016), the Seventh Circuit affirmed the district court's weighing of the individual plaintiff's "stated reasons supporting anonymity—that having to proceed under his true name would defeat the purpose of his criminal expungement and any resulting embarrassment he might feel—against the public's and parties' rights to the identities of parties and the potential prejudice to the opposing parties," and agreed that "anonymity [wa]s not justified." *Village of Deerfield*, 819 F.3d at 377; *see also Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir. 2004)

---

[2] The State urges the Court not to follow these Tenth and Eleventh Circuit decisions, pointing instead to the Second Circuit's decision in *Do No Harm v. Pfizer Inc.*, 96 F.4th 106 (2d Cir. 2024), *op. vacated and superseded on reh'g*, 126 F.4th 109 (2d Cir. 2025). Defs.' Mem. Supp. Mot. Dismiss 6–7, 10. But, just three weeks after the State filed its Motion to Dismiss, that opinion in *Do No Harm* was vacated, and this Court will not adopt the reasoning of that now-vacated opinion.

("The concealment of a party's name impedes public access to the facts of the case, which include the parties' identity."). Here, however, Member A is not the named plaintiff—American Alliance is. Concealing for now the identity of a minor does not meaningfully frustrate the public's ability "to understand the grounds and motivations of a decision, why the case was brought (and fought), and what exactly was at stake in it." Defs.' Mem. Supp. Mot. Dismiss 10 (quoting *Mueller v. Raemisch*, 740 F.3d 1128, 1135–36 (7th Cir. 2014)). The State has not demonstrated that the Seventh Circuit's generalized disfavor towards pseudonymous litigation mandates the disclosure of Member A's legal name at this stage of the litigation.

At the motion-to-dismiss stage, a complaint need only provide "general factual allegations of injury resulting from the defendant's conduct," and the court must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (alterations and quotation marks omitted). The Court finds that American Alliance has satisfied its burden of pleading associational standing, and therefore, dismissal for lack of subject-matter jurisdiction is improper.

b. **Jurisdictional Discovery**

In the alternative, the State seeks limited jurisdictional discovery to investigate whether Member A in fact has standing to sue. Defs.' Mem. Supp. Mot. Dismiss 10–11. This request is denied. As explained above, the State advances a facial attack on American Alliance's standing, not a factual challenge. Therefore, American Alliance's factual allegations must be taken as true at this stage. *See Prairie Rivers Network*, 2 F.4th at 1007. Jurisdictional discovery as part of resolving a facial challenge to subject-matter jurisdiction is unwarranted. *See, e.g.*, *Zurich Am. Ins. Co. v. Tangiers Int'l LLC*, No. 18 C 2115, 2018 WL 3770085, at *2 (N.D. Ill. Aug. 9, 2018) (denying a request for jurisdictional discovery because the defendant brought "a facial and not

factual attack" on the jurisdictional allegations of the complaint); *cf. Apex Digit., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009) ("Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction.").

Even if the Court were to construe the State's challenge as a factual one, the State provides no reason to doubt American Alliance's allegations regarding Member A's membership status nor her satisfaction of all requirements of the Scholarship Program except race. *See* Compl. ¶¶ 20–30; Pl.'s Mem. Opp. Mot. Dismiss 11–12. With nothing to suggest that American Alliance's allegations of standing are untrue or ambiguous, the Court finds that jurisdictional discovery is not warranted at this stage. *Contra Woodard v. Quote Storm Holdings, LLC*, No. 23 C 55, 2023 WL 3627719, at *3 (N.D. Ill. May 24, 2023) ("Where the evidence offered by the parties is inconclusive as to subject-matter jurisdiction, a district court can permit limited jurisdictional discovery.").

## CONCLUSION

Accordingly, Defendants Jay Robert Pritzker and Kevin Huber's Motion to Dismiss Plaintiff's Complaint, ECF No. 11, is DENIED. Defendants' answer is due August 19, 2025.

Entered this 5th day of August, 2025.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE
